424 A.2d 1211

**COMMONWEALTH of Pennsylvania,**

v.

**Elson R. BROWN, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 14, 1980.

Filed Feb. 4, 1981.

Louis J. Presenza, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Marianne Cox, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

ROBERTS, Justice.

In *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974), the prosecutor in closing argument engaged in a

rhetorical attack upon the defense, calling to the jury's attention the defendant's failure to call as reputation witnesses members of the clergy or neighbors. In speaking for a unanimous Court holding that the prosecutor's remarks were improper and unwarranted, Justice (later Chief Justice) Eagen expressly admonished:

"There is no burden on a criminal defendant to establish his previous good reputation. If he fails to introduce testimony in this regard, no adverse influence may be drawn therefrom, nor may such an adverse inference be drawn merely because only a limited number of witnesses were called to testify as to the good reputation of the accused. And, by the same token, no such adverse inference may be drawn merely because the accused failed to call some particular individual as a character witness. The assistant district attorney asked the jury to do just that. His argument was much more than just an attack on the quality of the character testimony offered by Lipscomb—as the Commonwealth contends."

455 Pa. at 530–31, 317 A.2d at 208.

During closing argument in this case, the prosecutor asked the jury:

"Where are the school teachers to say that this gentleman is a good boy or a good man? If you were on trial, or a member of your family were on trial, how many people could you get to come in here?"

This closing argument is improper under *Lipscomb* and, accordingly, a new trial must be granted.

Appellant Elson Brown is charged with criminal homicide, including felony-murder, as well as robbery and conspiracy in connection with the death of Joseph Cohen, operator of a variety store in Philadelphia. According to the Commonwealth, on October 24, 1976, shortly after 9:00 a. m., appellant and three companions entered the victim's store pursuant to a plan, hung the victim from shelving in a back room, stabbed him to death, and fled with cash.

Three days after the incident, Philadelphia police arrested appellant and took him into custody. Police obtained an

inculpatory statement from appellant the same day. Appellant, seventeen years old at the time police obtained the statement, moved before trial to suppress the statement on the ground that police failed to comply with this Court's "interested adult" rule. See, e.g., *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669, cert. denied, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975). After a hearing, appellant's motion was denied. The case proceeded to trial before a jury.[1]

At trial, in seeking to establish appellant's involvement, the Commonwealth relied heavily upon the inculpatory statement which police had obtained from appellant. Appellant defended by challenging the voluntariness of the statement. Additionally, appellant presented a reputation witness, Mary Drew, who stated that appellant had an "excellent" reputation among those persons she knew in appellant's neighborhood.

The prosecutor did not cross-examine Drew in any respect, or otherwise attempt to refute this reputation evidence. Instead, he called the testimony of Drew into question in closing argument. First the prosecutor sought to comment upon the quality of the testimony:

"Oh, there was some other evidence in the case. I want to tell you something. You people live in the neighborhood in Philadelphia. The defendant has a good character, right? You heard that witness testify about good character. Does he have a good character? Well, he goes to school, he knows people, the family knows people. Obviously that lady is a friend of the mother and father who testified."

1. Appellant contends that his motion to suppress the statement should have been granted. In view of our disposition, granting appellant a new trial, we do not address this issue.

For the same reason we do not address appellant's other contentions, including (1) that the trial court erred in admitting a tape recording of appellant's statement, (2) that a mistrial should have been granted when a Commonwealth witness testified that other persons charged had implicated appellant, and (3) that prejudicial and inflammatory evidence, including a photograph of the victim and a knife allegedly used in the killing, was improperly introduced.

Immediately thereafter, building upon his statements that appellant "goes to school" and "knows people," and that "the family knows people," the prosecutor asked the jury the questions now challenged. The court denied appellant's immediate request for a mistrial.

The jury found appellant guilty of murder of the third degree, robbery, and conspiracy. Written post-verdict motions, including the present contention that the prosecutor engaged in misconduct, were denied. The court imposed a sentence of life imprisonment on the murder conviction, with concurrent sentences of ten to twenty years on the robbery conviction and five to ten years on the conspiracy conviction. These appeals followed.

Here, as in *Lipscomb*, in rhetorical terms the prosecutor made clear to the jury that appellant had failed to call a particular type of character witness, a school teacher. The prosecutor then asked the jury, again in rhetorical terms, to consider how many different character witnesses they would have called if they or members of their families were in appellant's position. By this rhetorical tactic, the prosecutor asked the jury to add as many individuals as the jury could imagine to the prosecutor's list of character witnesses not called. The prosecutor did much more than merely comment upon the quality of the reputation evidence offered. The prosecutor impermissibly asked the jury to draw the same adverse inference as in *Lipscomb* from appellant's failure to call reputation witnesses. As in *Lipscomb*, this rhetorical attack constitutes prosecutorial misconduct.

The Commonwealth cites *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173, cert. denied, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979), as an instance where "[t]his Court recently rejected a claim of prosecutorial misconduct based upon a summation that was more strongly worded than the challenged comment here." To the contrary, it is the closing argument in this case which is more strongly, and impermissibly, worded. In *Van Cliff*, the prosecutor commented upon the quality of the defendant's character witnesses actually called by telling the jury that "all of

these people who came before you are all relatives of the defendant." The prosecutor added that "[t]here weren't any members of the community who were not relatives who came forward and testified as to his quote 'good character.' " Nowhere, however, did the prosecutor engage in the pointed rhetoric found here and in *Lipscomb.* Indeed, this Court in *Van Cliff* took great care to point out that the challenged remarks "fall on the borderline of permissibility." 483 Pa. at 583, 397 A.2d at 1177. Here, by asking the jury to consider the absence of a particular type of character witness, as well as the number of persons the jurors would call if they or members of their families were in appellant's position, the prosecutor crossed "the borderline of permissibility" established in *Van Cliff.*[2]

Judgments of sentence vacated and new trial ordered.

NIX, J., concurs in the result.

KAUFFMAN, J., files a dissenting opinion, in which LARSEN, J., joins.

KAUFFMAN, Justice, dissenting.

Although the defendant has no obligation to establish his previous good reputation, when he chooses to open up the question of his character, the prosecutor may fairly comment upon the evidence offered. Here, defendant introduced only one character witness, a family friend. By noting the witness's bias and by adverting to the weakness of the evidence presented in light of the testimony not offered, the prosecutor's closing argument properly challenged the adequacy of defendant's attempt to establish his good reputation. Since I do not find the prosecutor's closing argument to have constituted prosecutorial misconduct, I would affirm the Judgments of Sentence.

LARSEN, J., joins in this dissenting opinion.

**2.** The Commonwealth suggests that any harm caused by the prosecutor's tactics was cured by the court's charge to the jury. At no time, however, did the court specifically address the matter of closing argument. This contention is without merit.